Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, #140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile:  (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Jacqueline Mulville*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Jacqueline Mulville,<br><br>           Plaintiff,<br><br>     v.<br><br>Aetna Life Insurance Company, The Home Depot, U.S.A., Inc., The Home Depot, U.S.A., Inc. Temporary Disability Income Plan,<br><br>           Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Jacqueline Mulville (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

*Jurisdiction*

1.    Jurisdiction of the Court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

1

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, The Home Depot, U.S.A., Inc. (hereinafter referred to as the "Company") sponsored, administered and purchased a group short term disability insurance policy which was fully insured by Aetna Life Insurance Company (hereinafter referred to as "Aetna"). The specific Aetna group disability policy is known as Group Policy No.: GP-839226 (hereinafter referred to as the "STD Policy"). The Company's purpose in sponsoring, administering and purchasing the Aetna STD Policy was to provide short term disability insurance for its employees. Upon information and belief, the Aetna STD Policy may have been included in and part of an employee benefit plan, specifically named The Home Depot, U.S.A., Inc. Temporary Disability Income Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, Aetna functioned as the claims administrator of the STD Policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plans may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Aetna.

5. Upon information and belief, Plaintiff believes Aetna operated under a conflict of interest in evaluating her claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of

benefits; *to wit*, Aetna's conflict existed in that if it found Plaintiff was disabled, it was then liable for payment of her short term disability benefits.

6. The Company, Plan and Aetna conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

### *Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

8. Incident to her employment, Plaintiff was a covered employee pursuant to the relevant Plan and policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits she may be entitled to from Defendants as a result of being found disabled; including but not limited to, the waiver of any premiums due on a life insurance policy, company provided health insurance benefits (coverage) and company provided pension or 401k contributions. At the present time, Plaintiff is not aware of any other potential employee benefits she may be entitled to in the event she is found disabled as a result of this action.

9. After working for the Company as a loyal employee, Plaintiff became disabled due to serious medical conditions and unable to work in her designated occupation as a Department Supervisor on or about November 11, 2013. Plaintiff has remained disabled as that term is defined in the relevant STD Policy continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

10. Following her disability, Plaintiff applied for STD benefits under the relevant STD Policy which provides the following definition of disability:

> You meet the test of disability if you are not able to perform the material duties of your own occupation because of an illness or injury, or because of a pregnancy-related condition. You are not performing the material duties of your own occupation if:
>
> - You are only performing some of the material duties of your own occupation; and
> - Your income is 80% or less of your predisability earnings solely because of an illness, injury or a disabling pregnancy-related condition.

11. In support of her claim for STD benefits, Plaintiff submitted medical records to Aetna from her treating physicians which supported her allegation she met the STD Policy's relevant definition of disability.

12. In a letter dated November 25, 2013, Aetna informed Plaintiff it was denying her claim for STD benefits.

13. Plaintiff timely appealed Aetna's decision to deny her STD claim and in support of her claim, she submitted to Aetna additional medical evidence demonstrating she met the definition of disability set forth in the relevant STD Policy.

14. In support of her appeal, Plaintiff submitted to Aetna medical questionnaires completed by two of her treating physicians, both confirmed Plaintiff was unable to work.

15. As part of its review of Plaintiff's claim, Aetna obtained medical records only "paper reviews" from one of its own medical consultants, Elana Mendelssohn, Psy.D. Upon information and belief, Plaintiff believes Dr. Mendelssohn is a long time consultant for Aetna who may have an incentive to protect her own consulting relationship with Aetna by providing paper reviews which selectively review or ignore evidence, such as occurred in Plaintiff's claim in order to provide opinions and reports which are favorable to Aetna and which supported the denial of Plaintiff's claim.

16. Plaintiff questions the independence, impartiality and bias of Dr. Mendelssohn to fully and fairly review her claim and she believes Dr. Mendelssohn's

4

opinions are adversarial to Plaintiff's claim given her business relationship with Aetna as well as her consulting relationships with other insurance companies and third party disability claim administrators.

17.     Aetna informed Plaintiff in a letter dated January 31, 2014, it had made a final decision to deny her claim for STD benefits and that she had exhausted her administrative remedies pursuant to ERISA as it relates to her STD claim.

18.     On or about February 13, 2014, Plaintiff submitted to Aetna a narrative letter authored by her treating family physician who opined, *"[Plaintiff] is not able to work..."*

19.     Aetna informed Plaintiff in a letter dated March 13, 2014 it had received the additional evidence submitted by Plaintiff, but that it was upholding its final decision to deny her claim for STD benefits.

20.     Upon information and belief, Aetna's January 31, 2014 and February 13, 2013 denial letters confirm it failed to provide a full and fair review and in the process committed several procedural violations pursuant to ERISA because it completely failed to credit, reference, consider, and/or selectively reviewed and de-emphasized most, if not all of Plaintiff's reliable evidence.

21.     From the time Aetna originally evaluated Plaintiff's claim for STD benefits through the date of filing this Complaint, Plaintiff's medical conditions have not improved and she has been unable to engage in any occupation.

22.     Upon information and belief, Aetna denied Plaintiff a lawful, full and fair review in her STD claim pursuant to ERISA for various reasons including but not limited to: arbitrarily rejecting Plaintiff's reliable evidence, failing to consider all the evidence submitted by Plaintiff and/or de-emphasizing the medical evidence supporting Plaintiff's claim and emphasizing evidence which suggested an opposite conclusion, failing to have

Plaintiff's claim reviewed by medical professionals who are truly independent, disregarding Plaintiff's self-reported symptoms, failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the combination of those diagnoses and impairments, failing to obtain an Independent Medical Examination when the STD Policy allowed for one and Plaintiff's disabling medical conditions could not be reasonably or fully evaluated by reviewing only her medical records and failing to consider the side effects from Plaintiff's medications and the effect they would have on her ability to work in her occupation.

23. Prior to its final denial, Aetna never shared with Plaintiff the report authored by Dr. Mendelssohn and never engaged Plaintiff in a dialogue so she could either respond to the report and/or perfect her claim. Aetna's failure to provide Plaintiff with the opportunity to respond to Dr. Mendelssohn's reports precluded a full and fair review, is a procedural violation of ERISA and does not comply with Ninth Circuit case law.

24. Aetna has notified Plaintiff she has exhausted her administrative appeals as it relates to her STD claim.

25. In evaluating Plaintiff's STD claim, Aetna had an obligation pursuant to ERISA to administer it "solely in her best interests and other participants" which it failed to do.[1]

---

[1] ERISA sets a special standard of care upon a plan Aetna, namely, that Aetna "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan. *See* 29 U.S.C. § 1104(a)(1). ERISA simultaneously underscores the particular importance of accurate claims processing by insisting that Aetna's "provide a 'full and fair review' of claim denials." *See Firestone*, 489 U.S. at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting 29 U.S.C. § 1133(2)). ERISA also supplements marketplace and regulatory controls with judicial review of individual claim denials. *See* 29 U.S.C. § 1132(a)(1)(B); and, *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (2008).

26. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest and any individual or company who was involved in and/or reviewed Plaintiff's claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced the decision to deny her STD benefits. Plaintiff is also entitled to discovery and the Court may consider extrinsic evidence regarding any ERISA violations committed by Defendants which may have precluded development of the record.

27. With regard to whether Plaintiff meets the definition of disability set forth in the STD Policy, the Court should review the evidence in Plaintiff's claims *de novo* because even if the Court concludes the Plans properly confer discretion to Aetna, its unlawful violations of ERISA committed during the review of Plaintiff's STD claim are so flagrant they justify *de novo* review.

28. As a direct result of Aetna's decision to deny Plaintiff's STD claim, she has been injured and suffered damages in the form of lost STD benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plans and/or Company as a result of being found disabled; including but not limited to, health insurance benefits or coverage, retirement and/or pension benefits, a life insurance policy and/or coverage and a waiver of the life insurance premium on that policy in the event Plaintiff became disabled.

29. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

30. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

1       WHEREFORE, Plaintiff prays for judgment as follows:

2       A.      For an Order finding that Plaintiff meets the definition of disability set forth in the STD Policy and requiring Defendants to pay Plaintiff the STD benefits that are owed as well as any other employee benefits she may be entitled to as a result of being found disabled pursuant to the STD Policy from the date she was first denied those benefits and prejudgment interest thereon;

        B.      For an Order requiring Defendants to continue paying Plaintiff the aforementioned disability and employee benefits until such a time as she no longer meets the STD Policy's and/or the Plan's requirements to receive those benefits;

        C.      For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

        D.      For such other and further relief as the Court deems just and proper.

DATED this 27th day of June, 2014.

SCOTT E. DAVIS. P.C.


By:   */s/ Scott E. Davis*
        Scott E. Davis
        Attorney for Plaintiff